THOMAS G. MATHEWSON *vs.* THE MATHEWSON CO., *et al.*

MAY 23, 1913.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, and Vincent, JJ.

(1)   *Adverse Possession.*

In an action of trespass and ejectment it appeared that the *locus in quo* was three lots used in connection with a hotel and all owned by X, the father of plaintiff. In 1896, X. conveyed the *locus* to his wife, who in 1902, conveyed it to the plaintiff, who at the same time executed to her a lease of the premises for life. This lease was not recorded, and plaintiff did not record his deed until 1910, after the death of his mother.

The defendants, also sons of X., acted as assistants to him until 1897, when he turned the management over to them, and they had charge thereof under a salary until his death in 1904, using the *locus* in connection with their operation of the hotel. In 1905, the X. Co. was organized and took over the business, defendants acting as managers and allowing the company to use the *locus*. Defendants knew in 1897 that their mother owned the *locus*:

*Held,* that, the original entry of the defendants was in a representative capacity, and as such was lawful. As the employees of their father and later of the company, they had used the land in connection with the operation of the hotel, and consequently no disseizin or ouster of the true owners had been effected on which a claim of adverse possession could be based, their occupation being at all times consistent with the true owner's title.

TRESPASS AND EJECTMENT. Heard on exceptions of defendant and overruled.

JOHNSON, C. J. This is an action of trespass and ejectment brought by Thomas G. Mathewson, of Warwick, R. I., against The Mathewson Company, a corporation, and Syria W. Mathewson and Everett I. Mathewson, all of Narragansett, in the county of Washington, to recover possession of certain lands situated in the last named place.

The property involved consists of three adjoining lots of land situated in said town of Narragansett, at a short distance from the Mathewson Hotel, at Narragansett Pier. The first of the lots is on Boone street and contains a two-storied structure, known as "the barracks," where the hotel help are boarded in summer and which is usually rented during the off season. The second lot, called the spring lot, is on Rodman street, on which are springs, artesian wells, a pumping house and pumps. From these springs and wells the water supply of the Mathewson Hotel is derived. The third lot is little more than a narrow strip of land and is used as a means of obtaining access from Rodman street to the spring lot.

These lots were formerly owned by Syria W. Mathewson, the father of the plaintiff and of the two last named defendants. The father also formerly owned and managed the Mathewson Hotel and used the three lots in connection therewith. On December 24th, 1896, Syria W. Mathewson, the father, by two deeds conveyed the premises involved to one William H. Taylor, who on the same day by two other deeds conveyed said premises to Anna E. Mathewson, the wife of said Syria W. Mathewson. On March 6th, 1902, the said Syria W. Mathewson and Anna E. Mathewson,

by full warranty deed, conveyed said lots to the plaintiff, At the same time the plaintiff, according to his testimony. executed and delivered to Mrs. Mathewson, his mother, a lease of said premises for the term of her life.  He testified that she gave the lease back to him to keep for her.  The life lease was never recorded and the deed was not recorded until May 12, 1910.

Both parents are now dead; Syria W. Mathewson dying on October 10th, 1904, and Anna E. Mathewson, March 20th, 1910.  Some time in August, 1910, the plaintiff visited the property, but found the defendants in possession, who refused to surrender the premises.  On September 30th, 1911, the plaintiff had notice to quit served upon the said defendants and subsequently brought the present action to recover possession of said land.

The case was tried before Mr. Justice Brown and a jury at a session of the Superior Court for Washington county, at Westerly, on the first day of May, 1912.  The defence relied upon was adverse possession.  At the conclusion of all the testimony, the plaintiff moved the court that a verdict be directed in his favor for possession and costs, and the defendants moved that a verdict be directed in their favor. The court granted the plaintiff's motion and denied that of the defendants, to both of which rulings the defendants duly excepted.  The case is now before this court on defendants' bill of exceptions.

The defendants rely solely upon their exception to the action of the court in directing a verdict for the plaintiff.

The plaintiff has title of the premises involved through the warranty deed from both his parents.  The validity of such deed is nowhere questioned.  There is no intimation in the evidence that the deed was not properly executed and delivered or that it was not legitimately obtained.

The defendants attempt to question the possession of the grantors of the plaintiff.  As to this, the plaintiff testifies that his mother was in possession at the time of the transfer to him and that his father used the lots in connec-

tion with the hotel which he conducted. The defendants, Syria W. and Everett I. Mathewson, both deny that their mother entered upon the land after the conveyance.

The witnesses offered for the defence were Syria W. and Everett I. Mathewson who are, as well, directors of the third defendant, The Mathewson Company. According to their testimony, they have been in the hotel business at the Mathewson house, at Narragansett Pier, all their lives. They commenced as assistants to their father, who then ran the hotel, receiving a salary for their services; and this arrangement continued down to the year 1897.

Some time during this year they testify that their father relinquished active management of the business and turned it over to them, and that thereafter they had exclusive charge thereof. For this, both brothers continued to receive a salary. They continued to use the property involved in the present action, in connection with their operating the hotel until their father's death. The year following, The Mathewson Company was organized and thereafter took over the business. Syria W. and Everett I. Mathewson, however, remained the managers of the new company and allowed said company to use the buildings and get water for the hotel. They knew at the time of the alleged change of management in 1897 that their mother owned the premises. In the same year, viz.: 1897, in which the two defendants claim to have assumed management, certain charges as taxes, insurance, etc., became due against the property in suit. They went to their mother on several occasions and informed her that if they paid such charges, they should claim the property as theirs. The response the mother made to this proposal is not given by either of the witnesses. So far as Everett's testimony goes, she made no reply. Syria states that "*she never made any objection or any remarks about it.*" It appears, therefore, that the mother met said statement with silence. Both witnesses swear that they made this claim upon their mother, because they *knew* that she owned the land. They claim

to have paid such taxes, insurance, etc., and continued to use the premises in the way already described, viz.: for the benefit of the hotel. On this evidence their claim to title by adverse possession rests.

The plaintiff testified that his father conducted the hotel property until his death. He did not know that the defendants were in possession since 1896, and he did not know that they asserted any individual claim of title to the property until the summer of 1910, when he visited the premises. The first knowledge that he, in fact, had that the defendants were even in possession was in 1905. He testified that in the fall of 1902, or spring of 1903, he did inform his brother, Everett, that he had a deed of the property.

Everett I. Mathewson testified in regard to this, as follows: "55 Q. Your brother has testified that he notified you sometime in 1902, that he had a deed of this place. Did he? A. He didn't notify me he had a deed. Q. Did he give you any information that he had title to this property? A. He inferred he had control of the property. Q. What did you say to him at that time? A. I told him it was ours and should be ours and meant to be ours. Q. Who did you mean by our? A. My brother and myself. Q. Did he notify you at that time that your mother had conveyed it to him? A. No. Q. Say anything about a deed at all? A. No. Q. Do you remember the time you built an artesian well there? A. Yes, I remember the time the last artesian well was built. Q. When was that time with reference to the time you had the talk with your brother Thomas? A. At that time there was something said about the control at that time, but I didn't realize what it was then, what he meant. Q. He didn't tell you what it was? A. No."

The original entry of the defendants was, therefore, entirely in a representative capacity and as such was lawful. As the employees, first of their father down to 1904, and then of the corporation which succeeded in ownership of the hotel, they have used the land in question in connection

with the operation of and for the benefit of the Mathewson Hotel. No disseizin has consequently ever been effected or ouster of the true owners, on which any claims to adverse possession can be based.

It is apparent on the defendants' own testimony that their possession was never more than permissive and entirely by reason of their connection with the management of the hotel, and their occupation was never inconsistent with the true owner's title. *Draper* v. *Monroe,* 18 R. I. 398; *Glezen* v. *Haskins,* 23 R. I. 601.

Defendants' exceptions are overruled and the case is remitted to the Superior Court for Washington county for entry of judgment for the plaintiff on the verdict.

*Henry P. Eldredge, Jr.,* for plaintiff.
*Frederick C. Olney,* for defendant.